AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of South Carolina

| | |
|---|---|
| United States of America<br>v.<br>Jeckson Armando VASQUEZ-Salmeron<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.   2:26-mj-00019 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____March 5, 2026_____ in the county of _____Charleston_____ in the
_____ District of _____South Carolina_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 111 | Assaulting, resisting, or impeding certain officers or employees |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

JOHNNY M WALTON    Digitally signed by JOHNNY M WALTON
Date: 2026.04.08 17:16:06 -04'00'
_____
*Complainant's signature*

Johnny Walton Special Agent
_____
*Printed name and title*

Sworn to me via telephone or other reliable electronic means
and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:   April 09, 2026

_____
*Judge's signature*

City and state:   Charleston, South Carolina

Mary Gordon Baker, United States Magistrate Judge
_____
*Printed name and title*

UNITED STATES OF AMERICA        )
STATE OF SOUTH CAROLINA         )    **<u>AFFIDAVIT</u>**
COUNTY OF CHARLESTON            )

I, Johnny Walton, having first been duly sworn, depose and state as follows:

1.      I have been employed as a Special Agent for the Department of Homeland Security (formerly, United States Department of the Treasury), United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations (HSI)  (formerly, United States Customs Service, Office of Investigations) since May 2002.[1] During that time I have conducted and participated in numerous criminal investigations involving, among other things the unlawful importation into the United States of merchandise contrary to law, narcotics, alien smuggling, manufacture and sale of counterfeit documents, export violations, money laundering violations, Customs fraud, Intellectual Property Rights (IPR) and other violations of Immigration and Customs law. I am currently assigned to the National Security, Public Safety and Border Enforcement Security Task Force (BEST) Group at the Office of the Assistant Special Agent in Charge, Charleston, South Carolina (ASAC/CT).  I am a graduate of the United States Customs Service Academy, a sixteen-week live-in training academy that gives basic and thorough indoctrination for Homeland Security Investigations Special Agents.  Prior to beginning my career as a federal law enforcement officer, I was employed as a Police Officer by the Charlotte-Mecklenburg Police Department in Charlotte, North Carolina for over 5 years.

2.      I have received training and experience in the methods utilized to import and export materials contrary to the laws of the United States.  During my career in law enforcement, I have functioned in a variety of capacities.  These include but are not limited to: a case agent which included conducting undercover activities and supervising confidential informants; a surveillance

---

[1]     U.S. Customs became part of the Department of Homeland Security on March 1, 2003. Individuals who were formerly employed as Special Agents in the Department of Treasury, U.S. Customs Service, Office of Investigations, are currently referred to as "ICE/HSI Special Agents."

agent observing and recording the movements of individuals who traffic in drugs or other illicit contraband and those suspected of trafficking in illicit contraband; and interviewing witnesses, cooperating individuals and informants regarding these illegal activities.  I have also participated in the execution of numerous search and arrest warrants in connection with the above-mentioned investigations.

3.      I make this affidavit in support of a complaint and warrant for the arrest of Jeckson Armando VASQUEZ-Salmeron (hereinafter VASQUEZ) for a violation of 18 U.S.C. § 111 (Assaulting, resisting, or impeding certain officers or employees) which has the following essential elements: 1)  The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or employee of the United States as designated in 18 U.S.C. § 1114; 2) The defendant did so forcibly; 3) The defendant did so while the employee was engaged in or on account of the performance of official duties; and 4) The defendant did so intentionally

4.      The information contained in this affidavit is based on my own personal observations, as well as information from other law enforcement agents and officers.  Since this affidavit is being submitted for the purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that VASQUEZ has committed these violations of law.

5.      On March 5, 2026, at approximately 7:00 a.m., the U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), Fugitive Operations Team (FOT) was conducting a targeted enforcement operation in the area 120 S. Cranford Road, Goose Creek, South Carolina, 29445.  ICE/ERO officers identified a male subject matching their target's physical description, to include height, weight and facial hair, enter a black Ford Mustang at that location.  ICE/ERO Officers Avent and Drabinski initiated a vehicle stop on the black Mustang at

2

the entrance to the Pine Lakes Apartments complex. Officer Drabinski initiated the vehicle stop by activating his emergency lights and exited his vehicle wearing government issued body armor with "Police ICE" insignia. ICE/ERO Officers identified the main target Jose Luis CERECEDO-Hernandez (Hereinafter CERECEDO-Hernandez) as the driver and removed CERECEDO-Hernandez from the vehicle. Additional ICE/ERO Officers positioned their vehicles with emergency lights activated around the vehicle stop to assist in the arrest and traffic control. All ICE/ERO Officers were observed by Officer Avent to be wearing their government issued body armor with Police insignia.

6.     During the arrest of CERECEDO-Hernandez, ICE/ERO Officers encountered Dixie Liset SALMERON-Flores (Hereinafter SALMERON-Flores) in the front passenger seat of the vehicle. SALMERON-Flores identified herself to ICE/ERO Officers and stated that she did not have legal status in the United States. At that time, Officer Farley observed SALMERON-Flores speaking to someone on speakerphone on her cellular telephone, and SALMERON-Flores told the unknown person her location and that immigration officers had conducted a traffic stop on her. At that time, Officer Farley asked SALMERON-Flores to end the call and step out of the vehicle, to which she eventually complied.

7.     At that time, as officers were securing CERECEDO-Hernandez and SALMERON-Flores, Officer Drabinski observed a secondary target vehicle, a two-door silver Lexus bearing SC registration 654 AHE, without a hood driving up to the area of the vehicle stop. That vehicle was previously observed during surveillance being driven by a younger male subject that exited CERECEDO-Hernandez's residence and was believed to be his son or relative. Officers also believed that the vehicle was occupied by SALMERON-Flores' son, Jeckson Armando VASQUEZ-Salmeron, with whom she was speaking on speakerphone at the time of the vehicle

3

stop. Officer Drabinski then instructed Officer Rajabi to have the driver of the vehicle pull over and stop.

8.      Affiant later determined that the silver Lexus bearing SC 654 AHE is registered to Jose Luis CERECEDO-Hernandez, 1004 Maverick Drive, Hanahan, SC 29410.

9.      Officer Rajabi, who was wearing government issued body armor with "Police" insignia, walked towards the Lexus as it was passing officers at the vehicle stop in an attempt to stop the vehicle. Officer Rajabi gave numerous verbal commands to the driver to stop the vehicle. Officer Rajabi was positioned at the front passenger side of the vehicle attempting to gain compliance from the driver. As the vehicle approached Officer Rajabi, the driver began to accelerate and Officer Rajabi had to jump out of the way of the vehicle, and the vehicle's side mirror made contact with Officer Rajabi's lower forearm and hand. Officer Farley observed Officer Rajabi giving the driver of the vehicle commands to stop, however, the driver of the vehicle did not stop, and Officer Rajabi had to jump out of the path of the vehicle. The driver of the vehicle then sped recklessly around another vehicle exiting the apartment complex through another parking lot and onto Red Bank Road.

10.     At that time, ICE/ERO Officers requested additional law enforcement assistance from the Charleston County Sheriff's Office (CCSO), the Berkeley County Sheriff's Office (BCSO), and the South Carolina Law Enforcement Division (SLED) in locating the vehicle that made contact with Officer Rajabi. At approximately 12:03 p.m., the vehicle was captured on a License Plate Reader (LPR) crossing over the Cosgrove Avenue bridge going into the West Ashley community in Charleston, South Carolina. At that time, officers began to travel to that area to locate the vehicle.

11.     At approximately 12:55 p.m., BCSO Detective Sergeant (Sgt.) Dan Green located the vehicle parked in front of 1414 River Front Drive, Charleston, SC, 29407. Approximately one

4

minute later, Sgt. Green observed VASQUEZ exit the apartment building and walk toward the vehicle. VASQUEZ entered the vehicle's driver's side and appeared to be on his phone. VASQUEZ then backed the vehicle out of the parking space and started to drive toward the exit of the parking lot.

12.     At that time, SLED Special Agent (SA) John Stott entered the parking lot driving his government owned vehicle . Sgt. Green was behind VASQUEZ's vehicle, and SA Scott pulled directly in front of VASQUEZ's vehicle and initiated his blue lights. VASQUEZ then rapidly accelerated in reverse toward Sgt. Green's vehicle, requiring him to reverse to avoid being struck. VASQUEZ then put the vehicle in drive and accelerated toward SA Stott's vehicle striking it and causing significant damage. Body camera footage from the scene shows that the emergency lights for SA Stott's vehicle were on and visible. (SA Stott's vehicle is owned by the Federal Bureau of Investigation (FBI). SA Stott is an FBI Task Force Officer (TFO) and was driving the FBI vehicle at the time of the incident.)

13.     Sgt. Green then observed VASQUEZ open the driver's side door and flee the scene on foot. Sgt. Green gave chase and gave verbal commands of "Sheriff's Office, STOP!" VASQUEZ began yelling, "ICE, ICE" and began reaching into his right pants pocket. After a short foot pursuit, SA Stott threatened VASQUEZ with the use of a taser, which caused VASQUEZ to stop running. Sgt. Green and SA Stott then apprehended VASQUEZ without further incident.

14.     After VASQUEZ was captured, he made statements such as, "This is illegal man, what the fuck?" When ERO Officers asked VASQUEZ for his name he replied, "Fuck You!" VASQUEZ also told the officers, "Go fuck yourself, don't talk to me!" VASQUEZ became resistant to officers by leaning against the escort officer and when asked by the officer for VASQUEZ not to lean against him, again VASQUEZ told officers, "Fuck You, I'm fucking out

5

of here!" VASQUEZ then had to be placed in a position of disadvantage on his knees so that officers could gain full compliance.

15.     On March 11, 2026, HSI SA Johnny Walton and SA David Moody interviewed VASQUEZ regarding his involvement in the ICE/ERO encounter and vehicle collision that occurred on March 5, 2026. Prior to the interview, VASQUEZ was given an ICE Statement of Rights Waiver form. VASQUEZ stated that he could read and speak English. SA Walton read the form to VASQUEZ in English and VASQUEZ initialed next to each of the rights indicating that he understood them. At approximately 1:17 p.m., VASQUEZ signed the rights waiver form and agreed to answer questions regarding the ERO encounter and vehicle collision with law enforcement.

16.     VASQUEZ stated that at approximately 7:00 a.m., he was getting ready for school, and his mother was getting ready to go to work. VASQUEZ stated that before his mother left for work, she asked if he had some money for rent, so VASQUEZ gave his mother the money that he had to pay the rent. VASQUEZ stated that approximately five minutes later he received a call from his mother saying there were ICE agents outside of their apartment. VASQUEZ stated that his mother told him not to go outside, but he went outside anyway to try to help his mother. VASQUEZ stated that when he was driving to where his mother was stopped, he saw some ICE officers pointing to other ICE officers to get them to stop him (VASQUEZ). VASQUEZ stated that was when he became frightened and drove off to go to his school.

17.     VASQUEZ stated that once he was released from school that day, he went to West Ashley to try to get money to go speak to a lawyer and that is where everything happened. VASQUEZ stated that he did not know the address that he went to, but it was a friend's residence. VASQUEZ stated that he was trying to get money for gas from his friend so that he could go speak to a lawyer, but it didn't happen. VASQUEZ stated that he went to the white brick apartments off

6

River Front Drive, Charleston, SC. VASQUEZ stated that he went inside his friend's apartment, but he did not get any money.

18.     VASQUEZ stated that when he was leaving his friend's apartment, he got into his car and someone blocked him from behind and from the front. VASQUEZ stated that he did not know who they were because the vehicles were tinted and there were no logos on their vehicles. VASQUEZ stated that since they were blocking him and he did not know who they were, he panicked and was trying to get away. VASQUEZ explained that his vehicle was parked in a parking space in front of the last building on the right and when he went to back out of the parking space, he saw the vehicle behind him and in front of him trying to block him. VASQUEZ stated that he did not know what was going on and he tried to go another way and that is when the collision occurred.

19.     VASQUEZ stated that once the collision happened, he got out of his vehicle and started running and then heard, "Taser, Taser" and he stopped running because he did not want to get tased. VASQUEZ stated that he did not recall hearing anyone say, "Police" only "Stop" and "Taser, Taser!" VASQUEZ stated that he was yelling while he was running, but he did not recall what he was saying. VASQUEZ stated that he did not know who was telling him to stop and he just thought he was in danger. VASQUEZ stated that once he stopped running and turned around, he saw an officer wearing Police markings. VASQUEZ stated that when the officers caught up to him, he did not recall resisting when they were taking him into custody.

## CONCLUSION

20.     Based on my training and experience, as well as the information and evidence that has been gathered in the investigation described herein, VASQUEZ did assault, resist and or impede officers as they were making a lawful arrest on March 5, 2026. Further, VASQUEZ did

7

assault, resist and or impede officers a second time once he was located at 1414 River Front Drive, Charleston, SC 29407 causing a vehicle collision and fleeing the scene on foot.

21.    Therefore, I believe there is probable cause to conclude that VASQUEZ has committed violations of federal law, including violations of 18 U.S.C. § 111 [Assaulting, resisting, or impeding certain officers or employees]

This Affidavit has been reviewed by Assistant United States Attorney Lamar Fyall.

JOHNNY M WALTON
Digitally signed by JOHNNY M WALTON
Date: 2026.04.08 17:21:34 -04'00'

Johnny Walton
Special Agent
Homeland Security Investigations

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

This 9th  day of April, 2026

The Honorable Mary Gordon Baker
United States Magistrate Judge

8